```
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------------------------X
                                                           :
  UNITED STATES OF AMERICA,                                :
                                                           :
                    -v-                                    :    1:19-cr-478-GHW
                                                           :
  CYNTHIA JORDAN,                                          :         ORDER
                                                           :
                              Defendant.                   :
                                                           :
-----------------------------------------------------------X
```

GREGORY H. WOODS, United States District Judge:

Cynthia Jordan is a white collar criminal who stole more than $688,000 from her employer over the course of seven years. She has not yet served a day in prison as a result of her crime. Now she asks the Court to change its sentence of a year and a day (approximately 10 months if she earns good time credit) to time served (essentially no time in jail) because of the potential risk to her associated with COVID-19. Because Ms. Jordan has not satisfied the statutory preconditions to her motion, the Court must deny her motion. Because just punishment for Ms. Jordan's long-running and sophisticated crime requires some period of incarceration, the Court would deny her motion regardless.

I.   BACKGROUND

Cynthia Jordan was entrusted with a role of great responsibility by her employer; she was the head of its accounting department. Sentencing Transcript, Dkt. No. 27 ("Tr."), at 24:19-24. Ms. Jordan abused that trust. Over the course of seven years, Ms. Jordan took advantage of her position to embezzle approximately $688,000. *See, e.g.* Tr. at 23:4-24:18. She falsified records to hide her tracks, including in response to a request for information from the Securities and Exchange Commission. *Id.* 24:6-8. She used the stolen money to line her and her family members' pockets,

and to acquire the accoutrements of wealth, including a Porsche. *Id.* at 24:22-25; 30:17-19.

On February 4, 2020, the Court sentenced Ms. Jordan to serve a year and a day of imprisonment for her crime. Dkt. No 30. That sentence represented a substantial downward variance from the advisory guidelines sentence of 33-41 months imprisonment. Tr. at 21:11-12. The Court has already deferred the date for Ms. Jordan to report to prison to August 4, 2020. She has not yet served a day in prison as a result of her multi-year, multi-hundred thousand dollar, white collar crime. Now, Ms. Jordan has asked the Court to relieve her from any obligation to serve time for her offense.

On July 8, 2020, Ms. Jordan filed a motion requesting that the Court grant her "compassionate release" pursuant to 18 U.S.C. § 3582(c). Dkt. No. 39 (the "Motion"). Ms. Jordan asserts that the COVID-19 pandemic poses a substantial risk to her health: she is 62 years old and suffers from a number of underlying health conditions, which, she asserts, place her at high risk of developing serious medical consequences if she catches the disease. Motion at 1. She asserts that risk gives risk to a "compelling and extraordinary" reason to modify her sentence so that she need not spend a day in prison as a result of her crime.

The Government filed an opposition to the Motion on July 14, 2020. Dkt. No. 40. In its opposition, the United States argues, among other things, that Ms. Jordan has not exhausted the statutory preconditions to a change in her sentence under 18 U.S.C. § 3582(c). For that reason, and the others that follow, the Court denies Ms. Jordan's motion.

## II.     LEGAL STANDARD

As a general rule, courts are prohibited from modifying a defendant's term of imprisonment once it has been imposed. 18 U.S.C. § 3582(c) ("The court *may not* modify a term of imprisonment once it has been imposed except" in specified circumstances) (emphasis added). The statute provides for specific exceptions to that general rule: "upon motion of the defendant after the

defendant has fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf," "after considering the factors set forth in section 3553(a) to the extent they are applicable, if it finds that--extraordinary and compelling circumstances warrant such a reduction . . . and that such a reduction is consistent with the applicable policy statements issued by the Sentencing Commission." 18 U.S.C. § 3582(c)(1)(A)(i).

"Congress has delegated authority to the Sentencing Commission ('USSC') to 'describe what should be considered extraordinary and compelling reasons for sentence reduction.'" *United States v. Ebbers*, — F. Supp. 3d —, No. (S4) 02 Cr. 1144-3 (VEC), 2020 WL 91399, at *4 (S.D.N.Y. Jan. 8, 2020) (quoting 28 U.S.C. § 994(t)). The relevant policy statement is U.S.S.G. § 1B1.13 (the "Policy Statement"). The Policy Statement states that a court may reduce a defendant's term of imprisonment

> if, after considering the factors set forth in 18 U.S.C. § 3553(a), to the extent that they are applicable, the court determines that—
>
> (1) (A) extraordinary and compelling reasons warrant the reduction; or
>
>    (B) the defendant (i) is at least 70 years old; and (ii) has served at least 30 years in prison pursuant to a sentence imposed under 18 U.S.C. § 3559(c) for the offense or offenses for which the defendant is imprisoned;
>
> (2) the defendant is not a danger to the safety of any other person or to the community, as provided in 18 U.S.C. § 3142(g); and
>
> (3) the reduction is consistent with this policy statement.

1 U.S.S.G. § 1B1.13.

The commentary to the Policy Statement provides guidance regarding the circumstances in which "extraordinary and compelling reasons" for a reduction in a defendant's sentence exist.[1] The

---

[1] The Policy Statement has not been updated since the passage of the First Step Act of 2018 (the "First Step Act"), Pub. L. No. 115-391, 132 Stat. 5194. The First Step Act amended 18 U.S.C. § 3582 to permit a defendant to bring a motion for compassionate release if the BOP chose not to file one on his behalf. The language of the Policy Statement does not reflect the fact that under the First Step Act, the Court will be making determinations regarding the existence of compelling and extraordinary circumstances without the input of the BOP. As the court observed in *Ebbers* the Policy

3

commentary highlights three particular grounds for such a finding: the medical condition of the defendant; the age of the defendant; and family circumstances. 1 U.S.S.G. § 1B1.13 cmt. n.1(A)-(C). The Court is not limited to the consideration of those factors alone, however. The Policy Statement anticipates that other reasons can support a finding of extraordinary and compelling circumstances that permit a sentence reduction. 1 U.S.S.G. § 1B1.13 cmt. n.1(D) (permitting a finding of extraordinary or compelling circumstances when "there exists in the defendant's case an extraordinary and compelling reason other than, or in combination with, the reasons described in subdivisions (A) through (C) [medical condition, age, and family circumstances of the defendant]"); *see also United States v. Millan*, No. 91-CR-685 (LAP), 2020 WL 1674058, at *6-7 (S.D.N.Y. Apr. 6, 2020) (outlining the discretion of district courts in evaluating extraordinary and compelling circumstances).

The Policy Statement states that the following medical conditions are sufficient to support a finding of extraordinary and compelling reasons for a reduction in a defendant's sentence:

(A) Medical Condition of the Defendant.—

(i) The defendant is suffering from a terminal illness (i.e., a serious and advanced illness with an end of life trajectory). A specific prognosis of life expectancy (i.e., a probability of death within a specific time period) is not required. Examples include metastatic solid-tumor cancer, amyotrophic lateral sclerosis (ALS), end-stage organ disease, and advanced dementia.

(ii) The defendant is—
(I) suffering from a serious physical or medical condition,
(II) suffering from a serious functional or cognitive impairment, or
(III) experiencing deteriorating physical or mental health because of the aging process,

that substantially diminishes the ability of the defendant to provide self-care within the environment of a correctional facility and from which he or she is not expected

---

Statement "is at least partly anachronistic because it has not yet been updated to reflect the new procedural innovations of the First Step Act. For example, it refers in its opening line to a 'motion of the Director of the Bureau of Prisons.'" *Ebbers*, 2020 WL 91399, at *4. Similarly, the commentary's formulation of the catch-all provision refers only to a determination by the BOP, not by a district court. 1 U.S.S.G. § 1B1.13 cmt. n.1(D) ("As determined by the Director of Prisons, there exists . . . .").

to recover.

1 U.S.S.G. § 1B1.13 cmt. n.1(A). According to the commentary to the Policy Statement, compelling medical conditions require a showing of a substantial, actual deterioration in the medical condition of the defendant—either "a terminal illness" or "a serious physical or medical condition . . . from which he or she is not expected to recover."

In this case—as in every other COVID-19 related "compassionate release" application that the Court has reviewed—the defendant's medical condition is not the type of "Medical Condition" described in the Policy Statement: she is not suffering from a terminal illness, and she does not have a medical condition from which she is not expected to recover. Instead, she is at risk of getting a disease in prison, which in some cases is terminal. So a finding of extraordinary and compelling circumstances in this case would rely not on the defendant's medical condition as described in the Policy Statement alone. Instead, the courts that have found the existence of extraordinary and compelling circumstances for a reduction in a defendant's sentence as a result of COVID-19 rely on an evaluation of a combination of factors including the defendant's physical condition and the court's assessment of the incremental risk associated with COVID-19. Many courts evaluating the existence of compelling and extraordinary circumstances also weigh the adequacy of the BOP's response to the pandemic, perhaps with an eye to the policy objective of thinning jail populations to reduce the likelihood of the spread of the disease. *See, e.g., United States v. El-Hanafi*, No. 10-CR-162 (KMW), 2020 WL 2538384, at *5 (S.D.N.Y. May 19, 2020); *United States v. Zubkov*, No. 14-CR-773 (RA), 2020 WL 2520696, at *3 (S.D.N.Y. May 18, 2020).

### III. ANALYSIS

#### a. Ms. Jordan has failed to exhaust the statutory preconditions to this motion.

The statute does not permit the Court to grant Ms. Jordan's application for "compassionate release" because she has not met the statutory preconditions to bring a motion. A defendant may

5

bring a motion only "after the defendant has fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons [the "BOP"] to bring a motion on the defendant's behalf." 18 U.S.C. § 3582(c)(1)(A)(i). "[B]y its plain terms, the section applies only to those defendants who have begun serving their term of imprisonment at a BOP facility." *United States v. Konny*, No. 19-CR-283 (JGK), 2020 WL 2836783, at *2 (S.D.N.Y. May 30, 2020) (citing *United States v. Spruill*, No. 3:18-cr-0022-10, 2020 WL 2113621, at *3 (D. Conn. May 4, 2020)). Because Ms. Jordan has not satisfied the exception to the statute's mandate that courts "may not" change a sentence after it has been imposed, her motion is premature.[2]

### b. Ms. Jordan has not shown compelling or extraordinary reasons to change her sentence.

Ms. Jordan's motion is based on speculation, and therefore must be denied. Ms. Jordan's motion is based on an affidavit regarding conditions in federal jails dated March 27, 2020. Dkt. No. 39-1. But the Court is aware that there have been substantial changes in the BOP's management of their facilities in response to COVID-19 since then—and associated changes in the risk profile associated with the disease for prisoners. And there may be additional changes between now and the date of Ms. Jordan's eventual remand. Because her motion does not rely on current data, her argument invites the Court to engage in speculation about where she will be asked to surrender herself, the type of conditions that she will encounter in the BOP when she surrenders, the facility's ability to protect inmates from COVID-19, and the BOP's ability to treat her should she become ill.

---

[2] As the United States notes in its opposition, the case upon which Ms. Jordan relies to argue that she need not be in custody to bring this motion is readily distinguishable. In *United States v. Austin*, No. 06-CR-991 (JSR), 2020 WL 3447521 (S.D.N.Y. June 22, 2020), the defendant was out of custody at the time of his release, but had already served approximately 10 years of his sentence. In finding that the defendant need not make first return to custody in the BOP before bringing his motion, Judge Rakoff expressly distinguished *Austin* from the facts in *Konny and Spruill*. *Id.* at *2. Judge Rakoff acknowledged that the statutory provisions "indicate a role for the BOP in evaluating such motions, one which is theoretically undermined by allowing a defendant not in custody to petition for this form of relief." *Id.* And in *Austin*, the defendant had "duly filed with the . . . warden his compassionate release motion; yet the Bureau of Prisons . . . simply failed to act." *Id.* The facts of *Austin*, where the defendant spent approximately 10 years in prison and made an application to the BOP, are far from those here, where the defendant has not spent a day in prison, and asserts that she need not comply with the statutory precondition at all.

6

"Speculation of this kind, both as to the defendant's likelihood of contracting COVID-19 and as to the ability of the defendant's BOP facility to treat the defendant were he to contract COVID-19, is not a basis for compassionate release." *Konny*, 2020 WL 2836783, at *2 (citing *United States v. Hidalgo*, ––– F. Supp. 3d –––, –––, 2020 WL 2642133, at *4 (S.D.N.Y. May 26, 2020); *United States v. Lap Seng*, No. 15-cr-706, 2020 WL 2301202, at *9 (S.D.N.Y. May 8, 2020)). As described above, under the commentary to the Policy Statement, compelling medical conditions require a showing of a substantial, actual deterioration in the medical condition of the defendant. Understandably, lacking evidence regarding conditions in the facility where she will ultimately surrender, given that her surrender date is in the future, Ms. Jordan has supported her motion with data that is nearly four months old and that provides no information about the facility where she will ultimately be incarcerated—that is not sufficient to satisfy her burden here.

      **c. The Court's evaluation of the 3553(a) factors would not tolerate this proposed change in Ms. Jordan's sentence.**

The § 3553(a) factors weigh heavily against Ms. Jordan's motion. In order to grant a motion under § 3582(c), the Court must evaluate the § 3553(a) factors. 18 U.S.C § 3582(c)(1)(A). The factor that addresses the defendant's need for medical care weighs more heavily now as a result of COVID-19. But the Court cannot evaluate precisely how much more weight that factor should bear, because the Court has already delayed Ms. Jordan's report date once as a result of COVID-19, and will do so again. As a result, the Court knows neither what the conditions in the prisons will be at the time that she is to report to prison; nor how different the conditions in prisons will be from those existing in the public at large. And because Ms. Jordan is not currently incarcerated, and the Court does not know where she will be placed by the BOP, the Court cannot evaluate the conditions in existence at the facility where she is (or will be) located.

The other § 3553(a) factors continue to weigh heavily in favor of a sentence that includes a term of imprisonment. As described at sentencing, Ms. Jordan ran a complicated financial crime

7

over the course of many years. She abused the trust of her organization and colleagues to do so. She did it to line her pockets. The crime was serious, and the need to impose just punishment for it remains high—as does the need to deter other white collar criminals from engaging in the kind of complex financial theft executed by Ms. Jordan. On this record, the Court is disinclined to permit Ms. Jordan to exploit the global tragedy of the COVID-19 pandemic to allow her to walk away from her years of criminal conduct without substantial consequences.

## IV.     ANCILLARY RELIEF

Alternatively, Ms. Jordan has requested that the Court "further extend her self-surrender deadline until the COVID-19 pandemic is under control nationally and in the BOP in particular. At a minimum, she requests another 90-day extension." Motion at 15. The Court has already extended Ms. Jordan's surrender date once. The Court is pleased to do so again—it is a reasonable and targeted way to address the concerns articulated by Ms. Jordan. Ms. Jordan's surrender date is extended to November 12, 2020.

The Clerk of Court is directed to terminate the motion pending at Dkt. No. 39.

SO ORDERED.

Dated: July 15, 2020

_____
GREGORY H. WOODS
United States District Judge